## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **RYAN STODDART. On Behalf of Himself And All Others Similarly Situated,** | ) ) ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 3:15-cv-1307** |
| **v.** | ) | |
| | ) | **Div. _____** |
| | ) | |
| **DRAFTKINGS, INC.** | ) | |
| | ) | |
| 225 Franklin Street | ) | |
| 26th Floor | ) | |
| Boston, MA 02110 | ) | |
| | ) | |
| **Defendant.** | ) | |

## CLASS ACTION COMPLAINT

Plaintiff Ryan Stoddart., on behalf of himself and all others similarly situated in the State of Illinois, brings this Class Action Complaint against Defendant DraftKings, Inc.

## NATURE OF THE CASE

1.     This is a Class Action Complaint against Defendant DraftKings, Inc. ("DraftKings"), a company operating a Daily Fantasy Sports ("DFS") website in a manner that violates Illinois law.

2.     Plaintiff Stoddart brings this action on his own behalf and on behalf of Illinois consumers who, like himself, have sustained ascertainable losses arising out of DraftKings' systematic and continued violation of Illinois law.

3.     In short, DraftKings is independently operating an illegal online sports betting business within the State of Illinois.  DraftKings purposefully engages in commerce within the State of Illinois and intentionally does business with Illinois consumers.

4.      To avoid the clear statutory prohibitions against "contests of chance" under the Illinois Compiled Statutes, which include any activity wherein an individual "knowingly plays a game of chance or skill for money or other thing of value," DraftKings has duplicitously defined its sports betting operations as DFS and DFS "contests."



| Sport | Contest | Entry Fee | Total Prizes | Entries | Live | |
|---|---|---|---|---|---|---|
| | NFL $6M Millionaire Maker [$1M to 1st] | $20 | $6,000,000 | 68.6K/343.5K | Sun 12:00p | ENTER |
| | NFL $1M Kickoff Million [$1 Million Guaranteed] (Thu) | $3 | $1,000,000 | 198.7K/383.3K | 10:53:09 | ENTER |
| | NFL $1.25M Play-Action [$1.25 Million Guaranteed] | $3 | $1,250,000 | 102.1K/479.1K | Sun 12:00p | ENTER |
| | NFL $150K Slant [$150,000 Guaranteed] (Thu) | $9 | $150,000 | 8827/19.1K | 10:53:09 | ENTER |
| | $15M Fantasy Football World Champ Qualifier #95 (Thu) | $9 | 1 Prize + $10,000 | 3620/11.6K | 10:53:09 | ENTER |
| | $15M Fantasy Football World Champ Qualifier #94 (Thu) | $3 | 1 Prize + $10,000 | 13.2K/34.9K | 10:53:09 | ENTER |
| | NFL $450K Slant [$450,000 Guaranteed] | $9 | $450,000 | 9589/57.4K | Sun 12:00p | ENTER |
| | NFL MASSIVE $25 Double Up [$850,000 Guaranteed] | $25 | $850,000 | 7424/38.4K | Sun 12:00p | ENTER |
| | NFL $700K Blitz [$100,000 to 1st] | $300 | $700,000 | 270/2590 | Sun 12:00p | ENTER |
| | $15M Fantasy Football World Champ 2x Qualifier #97 & 98 | $3 | 2 Prizes + $17,000 | 9665/68.6K | Sun 12:00p | ENTER |
| | $15M Fantasy Football World Champ Qualifier #99 | $9 | 1 Prize + $10,000 | 828/11.6K | Sun 12:00p | ENTER |
| | $15M Fantasy Football World Champ Qualifier #100 | $20 | 1 Prize + $10,000 | 726/5235 | Sun 12:00p | ENTER |
| | NBA $1M Return to the Court [$100,000 to 1st] | $20 | $1,000,000 | 2088/57.2K | Wed 6:00p | ENTER |
| | NHL $30K BIG Power Play [$10K to 1st!] | $1,060 | $30,000 | 15/30 | 09:28:09 | ENTER |
| | NBA $200K Crossover [$200,000 Guaranteed] | $27 | $200,000 | 1717/8450 | 09:28:09 | ENTER |
| | NBA $250K Sharpshooter [$250,000 Guaranteed] | $3 | $250,000 | 30.4K/95.8K | 09:28:09 | ENTER |
| | NBA $100K 3-Ball [$20,000 to 1st] | $300 | $100,000 | 76/370 | 09:28:09 | ENTER |
| | NFL $250K Gridiron [$250,000 Guaranteed] (Thu) | $27 | $250,000 | 4608/10.5K | 10:53:09 | ENTER |
| | NFL $125K Blitz [$20,000 to 1st] (Thu) | $300 | $125,000 | 155/463 | 10:53:09 | ENTER |
| | NHL $65K Sniper [$65,000 Guaranteed] | $3 | $65,000 | 4988/24.9K | 09:28:09 | ENTER |
| | NHL $50K Face-Off [$50,000 Guaranteed] | $27 | $50,000 | 344/2112 | 09:28:09 | ENTER |

5.     The DFS "contests" available for selection on the DraftKings website, include teams and individuals from a wide variety of American professional sports leagues, such as the PGA, NCAA Football, NCAA Basketball, the NFL, the NBA, MLB, and the NHL.

6.     Unlike season-long fantasy sports, wherein participating individuals must participate in an extensive draft process and maintain a core roster over a period of months, including trades, roster moves, and injury replacements, individuals participating in a DraftKings DFS "contest" need only complete the selection of a single daily roster, which may include players already selected by other participants.

7.     Once a participant has selected a roster, DraftKings then accepts wagers from the participant and other bettors for the specific sporting event selected using a scheme they created that assigns values (points) based upon the performance of each athlete and team which is involved in the particular contest selected by the participant.

8.     After the sporting event has concluded, DraftKings then utilizes its scoring scheme to award points based upon the individual performances of each athlete selected by the participating individuals.

9.     Prior to the commencement of the subject sporting event(s), bettors select an entry fee, which may be in multiple amounts up to and including $5,000, and the number of games or teams they wish to play. If their roster generates more points than their rivals on that day or week, they win all of the money in the pot, minus the cut retained by DraftKings, usually 6.5%.

10.     DraftKings claims, in error, that its bookmaking operation was made legal by the Unlawful Internet Gambling Enforcement Act of 2006 ("UIGEA").

11.     On its website, www.draftkings.com, DraftKings mischaracterizes its DFS "contest" enterprise as a "game of skill."  Specifically, DraftKings.com states, "We are a US-based skill games company, and all of our contests are operated 100% legally under United States and Canada law. The US Government and 45 of the 50 states consider fantasy sports a game of skill."



12.     In referring to DFS enterprises, such as DraftKings, former Congressman Jim Leach, one of the original sponsors of the UIGEA, stated that the UIGEA, an anti-gambling statute, was supposed to stop gambling on the Internet – not promote it.

13.     Former Congressman Leach told the Associated Press: "There is no credible way fantasy sports betting can be described as not gambling." "Only a sophist can make such a claim." The federal regulation is codified at 31 U.S.C. 5361, *et seq*. The Act expressly provides that it shall not be construed as altering, limiting, or extending any state law that prohibits, permits, or regulates gambling within the United States.[1]

14.     DrafKings' operations are also unlawful under Illinois' criminal provisions.

15.     DraftKings defines its sports betting scheme as DFS "contests" in a deceptive attempt to circumvent Illinois Compiled Statutes Section 5/28, *et seq*. Section 5/28 defines gambling as ""knowingly play[ing] *a game of chance or skill for money or other thing of value*. . . ." 720 Ill. Comp. Stat. Ann. 5/28-1 (emphasis added).  Here, DraftKings describes its games on its own website as games of skill.  *See* DraftKings, Legal, *available a*t https://www.draftkings.com/help/why-is-it-legal (last visited Sept. 27, 2015).  Thus, and despite statements by DraftKings that it is "not considered gambling" and that "Federal Law and 45 of 50 states allow skill-based gaming," its games are considered gambling under Illinois Compiled Statutes Section 5/28.

16.     Under Illinois Compiled Statutes Section 5/28, games of skill and games of chance are both prohibited.

17.     Illinois consumers, like Plaintiff Stoddart and Class Members, can seek to recover damages from DraftKings in the form of restitution for lost wagers.

---

[1] 31 U.S.C. § 5361(b).

18.     Illinois Compiled Statutes 5/28-8 authorizes any person who has suffered gambling-related losses to recover such losses by a civil action.

19.     Plaintiff and Class Members are entitled, as a matter of law, to recover the money they lost, and in addition, are entitled to any and all fees that accrued to DraftKings on account of the gaming contracts being void.  Successful plaintiffs are entitled to recover triple the amount of their losses.

## PARTIES, JURISDICTION AND VENUE

20.     Plaintiff Ryan Stoddart is a resident of Madison County, Illinois, and is a citizen of the State of Illinois. He brings this action on behalf of himself individually, and on behalf of a Class of persons similarly situated as described in the Class Definition below. Plaintiff Stoddart wagered $20 on DraftKings on September 6, 2015 to participate in an MLB-based DFS "contest."  Plaintiff Stoddart suffered a monetary loss as a result of his September 6, 2015 wager. Plaintiff Stoddart also made twenty-four (24) wagers on DraftKings from August 2014 through September 2015 as a result of which he suffered monetary losses.

21.     Defendant DraftKings, Inc. is a Delaware corporation with its headquarters and principal place of business located at 225 Franklin Street, 26th Floor, Boston, Massachusetts 02110. Defendant DraftKings is not registered to do business within the State of Illinois despite regularly engaging in commerce in the State of Illinois with Illinois consumers.

22.     DraftKings offers daily and weekly fantasy sports contests for cash prizes in all of the five major sports (MLB, NHL, NFL, NBA and PGA) as well as college football and basketball. DraftKings' rapid-fire DFS "contests" are a much shorter duration than the traditional season-long fantasy sports leagues and require no team management after the draft. Further, DraftKings' salary cap draft format takes just minutes to complete, unlike the hours-long snake

6

drafts in traditional fantasy sports leagues. Finally, DraftKings offer new DFS "contests" every day of the season, and the company's winners are crowned nightly. Payouts happen immediately after the games.



23.    DraftKings conducts business throughout the State of Illinois.

24.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. 1332 (D), because the Putative Class consists of 100 or more members; the amount in controversy exceeds five million ($5,000,000) exclusive of costs and interest, and minimal diversity exists.

25.    Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff Stoddart's claims occurred in this district. Illinois is the proper venue.  Venue is proper in the Eastern Division because Plaintiff Stoddart is a resident of St. Louis County, Illinois, and a substantial part of the events or omissions giving rise to Plaintiff Stoddart's claims occurred in this division.

**FACTUAL BACKGROUND**

26.    Defendant DraftKings is operating an illegal online sports betting business within the State of Illinois.

27.    DraftKings accepts wagers from bettors for various sporting events using a scheme they created that assigns values (points) based upon the performance of athletes engaged

in amateur and professional athletic competitions.

28.     After the sporting events are concluded, DraftKings calculates a score using the system it created that awards points based upon the various individual college and professional athletes' performance. DraftKings then pays the bettors who have accumulated the highest total number of points.

29.     Plaintiff Stoddart is an individual who has utilized DraftKings' website. He has incurred monetary losses as a result of said use. Thus, Defendant DraftKings is indebted to Plaintiff Stoddart for the money so paid, wagered and lost.

30.     DraftKings is able to operate its website because it illegally and deceptively markets and represents DFS "contests" as a game of skill, like chess or the stock market.



**WHY IS IT LEGAL?** The legality of daily fantasy sports is the same as that of season long fantasy sports. Federal Law and 45 of the 50 US States allow skill based gaming.
Daily fantasy sports is a skill game and is not considered gambling.

31.     Plaintiff Stoddart alleges that the DraftKings' gambling platform requires very little or no skill and that the outcome therefore "depends in a material degree upon an element of chance." In fact, many of DraftKings' customers lack even a rudimentary understanding of sports, or betting strategy in general, and yet participate in DraftKings' operations, and lose or win based purely on luck.

32.     DraftKings' sports betting scheme is a "contest of chance" that involves little skill, and allows for the repetitive selection of individual players. As a result, the chance element predominates over any skill set.

33.     Even if DraftKings argues here that its games are skill-based, as it does on its website, it will still be held liable for violating Illinois law, which prohibits games of skill or chance played for any thing of monetary value.

34.     DraftKings attempts to induce consumer participation in its "contests" by advertising "Daily Fantasy Sports for Cash" and stating that individuals may "[c]ompete in 1-day contests and win! Welcome to the big time."



35.     DraftKings' sports wagering system involves selecting a set number of athletes that will play in a single sporting event.

36.     DraftKings has established a points system that correlates with the athletes' performance during a single athletic event.

37.     DraftKings determines which athletes its bettors may select, and then assigns a handicap (spread) based upon the athletes' perceived potential to score points.

38.     DraftKings eliminates almost the entire element of skill by establishing a handicap (similar to a point spread) for a limited number of athletes it determines can be used for a particular waging event, and allowing each individual bettor to select the same player, without eliminating said player's availability upon selection.

39.     By establishing a "spread" for each athlete and limiting the number of athletes the bettors can use, DraftKings is promoting and engaging in a gambling scheme predominately based upon chance.

40.     Illinois' penal law and civil law (and the UIGEA) prohibit DraftKings' sports betting scheme because it is a contest of chance.  Of course, and even if DraftKings argues that its games are skill-based, Illinois law will apply with equal force.

41.     DFS "contests," including the sports betting schemes implemented within the State of Illinois by DraftKings, return casino-type "odds" and involve little skill.

42.     In DFS "contests," as engaged in by DraftKings, a player is equally as likely to win with a randomly generated roster as a player is to win with a carefully crafted roster.

43.     DraftKings' gambling scheme is a contest of chance because an individual athlete's performance (especially in **a single game)** will always be affected by material elements of chance that affect scoring and winning outcomes, including variables such as player injury, fumbles, weather conditions, controversial officiating, suspension, the abilities and performance of the opposing team, or other off-field circumstances.

44.     Bettors have no measure of control over all of the variables that affect the performance of the college and professional athletes, rendering DraftKings' scheme a contest of

chance.

45.     DraftKings represents, advertises and promotes that its gambling scheme is not illegal.

 **BASICS**

**What Is DraftKings?**

**Is Playing On DraftKings Legal?**

You must be at least 18 years of age to open an account, participate in contests, or win prizes offered by the Website. In jurisdictions, territories, and locations where the minimum age for permissible use of the Website is greater than 18 years old, you must meet the age requirement in your local jurisdiction or territory. You must be at least 19 years of age at time of contest registration if you are a legal resident of Alabama or Nebraska. Legal residents physically located in any of the 50 states and Washington DC, excluding Arizona, Iowa, Louisiana, Montana, Nevada, and Washington are eligible to open an account and participate in contests offered by the Website. Legal residents of Arizona, Iowa, Louisiana, Montana, Nevada, and Washington (the "Excluded States") are ineligible for prizes offered by the Website. Residents of the Excluded States are eligible to open and maintain accounts on the Website for use only in games that do not offer prizes. Legal residents of Canada are eligible to open an account and participate in contests offered by the Website.

46.     DraftKings' representation that the UIGEA legalized bookmaking and gambling under the guise of "fantasy sports" is false and misleading.

47.     The UIGEA did not legalize fantasy sports; it merely provided an exemption to banks from being held liable for processing transactions relating to certain fantasy sports.

48.     The UIGEA was enacted to regulate banks and other payment processors, not bookmakers.

49.     Under the UIGEA's definition, unlawful Internet gambling means "to place, receive, or otherwise knowingly transmit a bet or wager by any means which involves the use, at least in part, of the Internet" that is illegal under federal, state, or tribal law.

50.     Illinois law prohibits sports betting schemes, including DraftKings' DFS "contests" scheme, and prohibits DraftKings from accepting payments from or entering into contracts with persons in Illinois.

## **INVALIDITY OF ARBITRATION PROVISION AND TERMS OF USE**

51.     DraftKings' Terms of Use is not a valid, enforceable contract.

52.     Plaintiff and the Class were fraudulently induced into providing money to

DraftKings because DraftKings misrepresented that its DFS "contests" constituted a game of skill. However, DFS "contests" are purely a contest of chance, and is thus illegal gambling under Illinois law.

53.     DraftKings' purported "Terms of Use" are void under Illinois law.  The "Terms of Use" are a purported contract in furtherance of illegal sports gambling and are void under Illinois law pursuant to Illinois Compiled Statute 5/28-7 ("Gambling contracts void").

54.     In addition, the so-called "Terms of Use" do not constitute a valid, mutual agreement because the promises made by DraftKings are illusory. Indeed, there is no restriction on DraftKings' ability to terminate the "agreement" or to refuse to perform. For example, the so-called "Terms of Use" provide that DraftKings and related individuals such as officers and directors are released from any liability for any claim by the user "whatsoever": "By entering into a Contest or accepting any prize, entrants, including but not limited to the winner(s), agree to indemnify, release and to hold harmless [DraftKings], its parents, subsidiaries, affiliates and agents, as well as the officers, directors, employees, shareholders, and representatives of any of the foregoing entities (collectively the "Released Parties"), from any and all liability, claims or actions of any kind whatsoever, including but not limited to … [examples of various types of liability listed]."

55.     Another reason why the so-called "Terms of Use" consitute an illusory contract is that it purports to reserve to DraftKings the right to deny service to any user for any reason "whatsoever": "[DraftKings] reserve[s] the right, in their sole and absolute discretion, to deny any contestant the ability to participate in head-to-head contests for any reason whatsoever." Thus, DraftKings is not bound to any performance obligation.

56.     Yet another reason why the so-called "Terms of Use" constitute an illusory

contract is that it purports to give DraftKings the right, "without prior notice," to "revoke any or all of your rights granted hereunder." Thus, once again, DraftKings is not bound to any performance obligation.

57.     The Terms of Use purport to require arbitration, but gives DraftKings the exclusive right to revoke the arbitration provision because it states that, " Any claim or dispute between you and [DraftKings] that arises in whole or in part from the Terms of Use, the Website or any Contest shall be decided exclusively by a court of competent jurisdiction located in Suffolk County, Massachusetts."

58.     In addition, a user only has to check a box saying he or she has read the Terms of Use to sign up for the website, and the deposit of money and entry into contests is done through separate transaction.

59.     The Terms of Use are procedurally and substantively unconscionable.

60.     As a direct and proximate result of the actions described above, Plaintiff Stoddart and Class Members cannot be bound by DraftKings' "Terms of Use," which are void as against public policy and void as an illusory contract.

## CLASS ALLEGATIONS

61.     A class action is the superior method of adjudication of Plaintiff Stoddart's claims as many similarly situated Illinois consumers have been identically affected by DraftKings' illegal DFS "contests." The Putative Class is so large that joinder of all members would be impracticable. Additionally, there are questions of law or fact common to the Class, the claims or defenses of the representative party are typical of the claims or defenses of the Class, and the representative party will fairly and adequately protect the interests of the Class.

62.     This action satisfies all of the requirements of Federal Rule of Civil Procedure 23,

including numerosity, commonality, typicality, adequacy, predominance and superiority.

63.    Numerosity: the Class is so numerous that joinder of all members is impracticable. While the exact number is not known at this time, it is generally ascertainable by appropriate discovery. News accounts discuss how many millions of users compete on DraftKings' website.

64.    Commonality: the claims made by Plaintiff Stoddart meet the commonality requirement because they present shared questions of law and fact, and resolving these questions will resolve the class wide litigation. These shared questions predominate over individual questions, and they include, without limitation:

a.    Whether Plaintiff Stoddart and Class Members have entered into contracts with DraftKings within the past five (5) years;

b.    Whether Plaintiff Stoddart and Class Members have entered into contracts with DraftKings within the past six (6) months;

c.    Whether such contracts are *per se* void under Illinois law;

d.    Whether Plaintiff Stoddart and Class Members paid monies to DraftKings in consideration of such contracts;

e.    Whether DraftKings' DFS "contests" constitute contests of chance under Illinois law;

f.    Whether DraftKings' operations violate Illinois criminal law;

g.    Whether DraftKings' operations violate Illinois civil law;

h.    Whether Plaintiff Stoddart and Class Members are entitled to restitution and recovery of lost wagers from DraftKings;

i.    Whether DraftKings fraudulently induced Plaintiff Stoddart and Class

Members into using its website under false pretenses, through material misrepresentations and/or material omissions;

j.   Whether DraftKings converted Plaintiff Stoddart's and Class Members' funds;

k.   Whether DraftKings has been unjustly enriched at the expense of Plaintiff Stoddart and Class Members;

l.   Whether Plaintiff Stoddart and Class Members have been damaged;

m.   Whether DraftKings is required to disgorge all monies received as a result of illegal gambling in violation of Illinois law; and

n.   Whether the Terms of Use are void as against public policy, unconscionable, illusory, fraudulent and/or otherwise invalid.

65.   Typicality: Plaintiff Stoddart's claims are typical of those of the other Class Members because Plaintiff Stoddart, like every other Class Member, was induced to use DraftKings' site based on false and misleading advertisements that DFS "contests" constituted a game of skill when, in fact, it is a contest of chance, thus constituting illegal gambling under Illinois law.

66.   The claims of Plaintiff Stoddart are furthermore typical of other Class Members because he makes the same claims as other Class Members; and Plaintiff Stoddart's claims and those of the Class Members are based upon the same legal theories, and arise out of the same practices and course of conduct engaged in by DraftKings. Plaintiff Stoddart has an interest in seeking compensation from DraftKings on behalf of all Class Members.

67.   Adequacy: Plaintiff Stoddart will fairly and adequately represent and protect the interests of his fellow Class Members.  Further, Plaintiff Stoddart has no conflicts of interest with his fellow Class Members. In addition, Plaintiff Stoddart has retained counsel on behalf of

himself and his fellow Class Members who are experienced class action attorneys that will zealously pursue this litigation.

68.    Superiority: The class action devise is the only appropriate method for fair and efficient adjudication of the claims at issue in this case. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members who could not individually afford to litigate a complex claim against large corporate defendants. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical.

69.    The nature of this action and the nature of Illinois law makes the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff Stoddart and the class for the wrongs alleged because DraftKings would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the cost of individual suits could unreasonably consumer the amounts that would be recovered; proof of a common course of conduct to which Plaintiff Stoddart was exposed is representative of that experienced by each Class Member and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

70.    The Proposed Class is described as follows:

**"All Illinois citizens who participated in Defendant DraftKings' DFS "contests," deposited money in a DraftKings account, and competed in any contest within the last five years."**

71.     Plaintiff Stoddart reserves the right to modify or amend the Class Definition and to modify, amend, add or remove proposed subclasses, before the Court determines whether certification is appropriate and as the Parties engage in discovery.

72.     Excluded from the Class are:

a.  DraftKings and any entities in which DraftKings has a controlling interest;

b.  Any entities in which DraftKings' officers, directors or employees are employed and any of the legal representatives, heirs, successors, or assigns of DraftKings;

c.  The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

d.  All persons or entities that properly execute and timely file a request for exclusion from the Class;

e.  Any attorneys representing the Plaintiff or the Class.

73.     Plaintiff Stoddart also brings this action on behalf of the following sub-class of persons (referred to herein as the "Section 5/28 Subclass"):

**"All Illinois citizens who participated in Defendant DraftKings' DFS "contests," deposited money in a DraftKings account, and competed in any contest any time between six months and two years from the date this action is filed."**

74.     <u>Numerosity</u>: the Section 5/28 Subclass is so numerous that joinder of all members is impracticable. While the exact number is not known at this time, it is generally ascertainable by appropriate discovery. News accounts discuss how many millions of users compete on DraftKings' website.

75.     <u>Commonality</u>: the claims made by Plaintiff Stoddart meet the commonality requirement because they present shared questions of law and fact, and resolving these questions

will resolve the class wide litigation. These shared questions predominate over individual questions, and they include, without limitation:

    a.   Whether Plaintiff Stoddart and Class Members have entered into contracts with DraftKings between six (6) months and two (2) years from the date this action is filed;

    b.   Whether such contracts are *per se* void under Illinois law;

    c.   Whether Plaintiff Stoddart and Class Members paid monies to DraftKings in consideration of such contracts;

    d.   Whether DraftKings' DFS "contests" constitute contests of chance under Illinois law;

    e.   Whether DraftKings' operations violate Illinois criminal law;

    f.   Whether DraftKings' operations violate Illinois civil law;

    g.   Whether Plaintiff Stoddart and Class Members are entitled to restitution and recovery of lost wagers from DraftKings;

    h.   Whether DraftKings fraudulently induced Plaintiff Stoddart and Class Members into using its website under false pretenses, through material misrepresentations and/or material omissions;

    i.   Whether Plaintiff Stoddart and Class Members have been damaged;

    j.   Whether DraftKings is required to disgorge all monies received as a result of illegal gambling in violation of Illinois law; and

    k.   Whether the Terms of Use are void as against public policy, unconscionable, illusory, fraudulent and/or otherwise invalid.

76.   <u>Typicality:</u> Plaintiff Stoddart's claims are typical of those of the other Section

5/28 Subclass Members because Plaintiff Stoddart, like every other Section 5/28 Subclass Member, was induced to use DraftKings' site based on false and misleading advertisements that DFS "contests" constituted a game of skill when, in fact, it is a contest of chance, thus constituting illegal gambling under Illinois law.

77.     The claims of Plaintiff Stoddart are furthermore typical of other Section 5/28 Subclass Members because he makes the same claims as other Section 5/28 Subclass Members; and Plaintiff Stoddart's claims and those of the Section 5/28 Subclass Members are based upon the same legal theories, and arise out of the same practices and course of conduct engaged in by DraftKings. Plaintiff Stoddart has an interest in seeking compensation from DraftKings on behalf of all Section 5/28 Subclass Members.

78.     Adequacy: Plaintiff Stoddart will fairly and adequately represent and protect the interests of his fellow Section 5/28 Subclass Members.  Further, Plaintiff Stoddart has no conflicts of interest with his fellow Section 5/28 Subclass Members. In addition, Plaintiff Stoddart has retained counsel on behalf of himself and his fellow Section 5/28 Subclass Members who are experienced class action attorneys that will zealously pursue this litigation.

79.     Superiority: The class action devise is the only appropriate method for fair and efficient adjudication of the claims at issue in this case. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Section 5/28 Subclass Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Section 5/28 Subclass Members who could not individually afford to litigate a complex claim against large

corporate defendants. Further, even for those Section 5/28 Subclass Members who could afford to litigate such a claim, it would still be economically impractical.

80.     The nature of this action and the nature of Illinois law makes the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff Stoddart and the class for the wrongs alleged because DraftKings would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Section 5/28 Subclass Members with superior financial and legal resources; the cost of individual suits could unreasonably consumer the amounts that would be recovered; proof of a common course of conduct to which Plaintiff Stoddart was exposed is representative of that experienced by each Section 5/28 Subclass Members and will establish the right of each Section 5/28 Subclass Members to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

## COUNT I
## VIOLATION OF Ill. Comp. Stat. 5/28, *et seq.*
### [On Behalf the Section 5/28 Subclass]

81.     Plaintiff Stoddart and Class Members hereby incorporate and re-allege, as though fully set forth herein, each and every allegation set forth in the preceding Paragraphs of this Complaint.

82.     Plaintiff Stoddart asserts this cause of action for violation of Illinois Compiled Statutes Section 5/28, *et seq.*, by virtue of the private right of action contained in Illinois Compiled Statute 5/28-8.

83.     Section 5/28 defines gambling as ""knowingly play[ing] a game of chance or skill for money or other thing of value. . . ."  720 Ill. Comp. Stat. Ann. 5/28-1.

84.     DraftKings' contract for DFS "contests" is not based upon skill, but instead constitutes a contest of chance and, thus, illegal gambling under Illinois law. Even if DraftKings were to argue that its contests were games of skill, and they are not, such games are equally violative of Illinois law.  Skill games that are *bona fide* games of skill, and contain no element of chance, can be exempted from these statutes. DraftKings "contests" rely on myriad elements of chance that are completely outside of players control, and are at the very least mixed games of chance and skill.  As such, contracts governing participation in those "contests" violate Illinois Compiled Statutes Section 5/28-7, *et seq.* and, therefore, are void as a matter of law.

85.     DraftKings is indebted to Plaintiff Stoddart and Class Members for the money so lost and paid, or converted the goods won from Plaintiff Stoddart and Class Members and put to its own use.

86.     Illinois Revised Statutes Section 434.030 authorizes any person who has suffered gambling-related losses to recover such losses by a civil action.

87.     As a direct and proximate result of DraftKings' violation of Illinois Compiled Statute Sections 5/28, *et seq.*, Plaintiff Stoddart and Class Members were damaged and are entitled to recover all monies lost as a result of DraftKings' void gambling contracts as allowed under Illinois Revised Statutes Section 5/28-8.

### COUNT II
### UNJUST ENRICHMENT
### [On Behalf of the Class]

88.     Plaintiff Stoddart and Class Members hereby incorporate and re-allege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

89.     DraftKings has improperly and wrongfully taken possession of, profited and/or

encumbered money from Plaintiff Stoddart and Class Members through an illegal gambling scheme, *i.e.* DFS "contests."

90.     By its actions in receiving payment and money from Plaintiff Stoddart and Class Members participating in the illegal gambling scheme known as DFS "contests," a benefit was conferred upon DraftKings to which DraftKings was not entitled yet still received and appreciated; and such benefit was conferred, premised on fraud, misrepresentation and/or bad faith.

91.     By DraftKings' improper and wrongful procuring of money under void gaming contracts, DraftKings was unjustly enriched to the commensurate financial and economic detriment of Plaintiff Stoddart and Class Members.

92.     DraftKings accepted and retained the benefit conferred upon it, despite its knowledge that it is illegal to participate in gambling in the State of Illinois and accept monies under a void gaming contract.

93.     Retaining the non-gratuitous benefits conferred upon DraftKings was unjust an inequitable. Therefore, DraftKings is liable for the disgorgement and payment of restitution of the benefits it retained, with applicable interest.

**COUNT III**
**CONVERSION**
**[On Behalf of the Class]**

94.     Plaintiff Stoddart and Class Members hereby incorporate and re-allege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

95.     DraftKings has and continues to improperly and wrongfully exercise dominion and control over Plaintiff Stoddart's and the Class Members' personal property, namely fees and

monies lost while participating in DraftKings' illegal DFS "contests."

96.     Plaintiff Stoddart and Class Members had, and continue to have, an ownership interest in the fees and monies they paid to DraftKings as a result of the illegal DFS gaming contract, *i.e.* illegal gambling.

97.     DraftKings has and continues to improperly and wrongfully exercise dominion and control over Plaintiff Stoddart's and the Class Members' personal property, *i.e.* money, for a significant and indefinite period of time, and Plaintiff Stoddart and the Class Members were harmed by DraftKings' conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Stoddart and Class Members pray for judgment against Defendant DraftKings, Inc. and for the following relief:

A.     That the Court determine that this action may be maintained as a class action in the United States District Court for the Western District of Illinois (Central Division) under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiff Stoddart be appointed a Class Representative, and that Plaintiff's counsel be appointed Class Counsel;

B.     That the Court find that DraftKings' practice of offering DFS "contests" within the State of Illinois constitutes the promotion of and engagement in illegal gambling and that DFS "contests" constitute a "contest of chance" under Section 572.010, *et seq.* of the Illinois Revised Statutes;

C.     That the Court order DraftKings to disgorge all sums paid, wagered, and lost by Plaintiff Stoddart and Class Members through their participation in DraftKings' illegal DFS "contests" during the Class Period;

D.    That Plaintiff Stoddart and Class Members recover their costs of the suit and attorneys' fees, as provided by law; and

E.    That Plaintiff Stoddart and Class Members have such other, further, and additional relief as the case may require and the Court may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff Stoddart and Class Members demand a jury trial as to all issues so triable.

Date: November 25, 2015

Respectfully submitted,

**BYRON CARLSON PETRI & KALB, LLC**


  /s/ Christopher W. Byron
Christopher W. Byron, IL# 6230810
Christopher J. Petri, IL# 6257456
411 St. Louis Street
Edwardsville, Illinois 62025
Telephone:     (618) 307-4054
Facsimile:      (618) 655-4004
Email: CWB@BCPKLaw.com
          CJP@BCPKLaw.com

**EDGAR LAW FIRM LLC**
John F. Edgar (to be admitted *pro hac vice*)
Mo. 47128
Boyce N. Richardson  (to be admitted *pro hac vice*)
IL Bar #6300667
Alexander T. Ricke (to be admitted *pro hac vice*)
IL Bar #6313820
1032 Pennsylvania Avenue
Kansas City, Missouri 64105
Telephone:     (816) 531-0033
Facsimile:      (816) 531-3322
Email: jfe@edgarlawfirm.com
          bnr@edgarlawfirm.com
          atr@edgarlawfirm.com

**SCHNEIDER WALLACE**
**COTTRELL KONECKY WOTKYNS LLP**
Garrett W. Wotkyns, AZ Bar No. 025887
(to be admitted *pro hac vice*)
8501 N. Scottsdale Road, Suite 270
Scottsdale, Arizona 85253
Telephone:      (480) 428-0141
Facsimile:      (866) 505-8036
Email: gwotkyns@schneiderwallace.com


**SCHNEIDER WALLACE**
**COTTRELL KONECKY WOTKYNS LLP**
Kyle G. Bates, CA Bar No. 299114
(to be admitted *pro hac vice*)
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone:      (415) 421-7100
Facsimile:      (415) 421-7105
Email: kbates@schneiderwallace.com